COMMONWEALTH *vs.* THE TENTH MASSACHUSETTS TURNPIKE CORPORATION.

The charter of the Tenth Massachusetts Turnpike Corporation was forfeited by a failure for many years to comply with the provision therein "that said corporation should annually exhibit to the governor and council a true account of the income or dividend arising from the tolls, with the annual disbursements on the road."

THIS was an information against the defendants to enforce a forfeiture of their charter for non-compliance with its provisions in several particulars. It was tried before *Dewey*, J. and by him reported on questions of law for the consideration of the whole court. The points involved sufficiently appear in the opinion. The arguments were at the September term 1852.

*I. Sumner*, (district attorney,) for the commonwealth.

*J. D. Colt & F. Chamberlin*, for the defendants.

DEWEY, J.    The legislature of this commonwealth by a resolve, chapter 90 of the Resolves of the year 1849, directed the district attorney of the western district to institute proceedings at law by *scire facias*, or otherwise, against the defendants to show cause why the charter of the corporation should not be adjudged to be forfeited. In pursuance of this resolve, an information, in the nature of a writ of *quo warranto*, was filed in this court, in which various omissions of duty in violation of the stipulations contained in their charter, were charged upon the defendants. Upon these charges, issues were joined by the parties, and those resulting in ques-

tions of fact were submitted to a jury. Upon one of these allegations, and one which seemed to be put forth as a very material one, namely, the allegation that the defendants had utterly neglected to keep and maintain their road in safe, convenient, and suitable repair for more than twenty years last past, the jury have passed and found this allegation unsup·ported by proof. There still remain, however, various other alleged causes of forfeiture in reference to which there exists no material disagreement as to the facts, and the inquiry is as to the legal effect of these omissions to comply with their charter.

Those presenting the strongest grounds on the part of the commonwealth for sustaining this information are, 1. The neglect of duty on the part of the defendants in not making the path of the road eighteen feet wide, as required by the charter. 2. The omission to comply with the following provision of the charter, namely: " That the said corporation shall annually exhibit to the governor and council a true account of the income or dividend arising from the tolls, with the annual necessary disbursements on said road." As to both these requisitions of the act creating the corporation, there has been an entire failure to comply with them, extending throughout the whole term of its existence. The only real question is, therefore, how far they are justified or excused by the circumstances of the case, and whether the right on the part of this commonwealth to maintain this information has been waived and lost.

This franchise having been granted to the defendants upon certain conditions annexed to the grant, a continued omission or neglect to perform them substantially, unless thus waived or excused, would furnish a sufficient ground for maintaining this process. It is the process adapted to the exigency of the case, and one which the government may, in the exercise of its sovereignty, require its public officers to pursue in cases of so serious a character as to authorize the interference of the government in vacating the charter, and thus annulling the grant of a franchise.

As to the first of the alleged omissions of duty devolved upon the defendants, the constructing of the travelled path of

Commonwealth *v.* Tenth Massachusetts Turnpike Corporation.

their road of the full width of eighteen feet, the deficiency was apparently one of a material character, and taking the most favorable view of the testimony or conceded facts as to this point, there was a substantial departure from the conditions and stipulations annexed to the grant. Various grounds are taken in answer to this alleged default. 1. That the approval of the road by a committee appointed by the court of sessions under section 1 of this charter is in itself an estoppel to any further allegation that the road was not properly constructed. In relation to this position, it seems to us that the object of this proceeding was of a more limited character than that of a final adjudication, whether the road was constructed in conformity with the charter. Its more immediate purpose certainly was, to authorize the defendants to erect toll gates, and to take tolls from the traveller, and as to all such travellers of whom toll was demanded, the approval of this road by this committee was conclusive of the right to demand toll. Beyond this, it is certainly questionable whether it could operate as an estoppel, and preclude the government from showing a substantial non-compliance with the stipulations of the charter. Under a charter with somewhat similar provisions, in the case of *The People* v. *Kingston & Middletown Turnpike Company*, 23 Wend. 193, such favorable report by commissioners, and the license of the governor thereupon to erect toll gates, was held not a bar to an information in the nature of a *quo warranto*, charging a forfeiture by reason of noncompliance with the terms of the charter in the construction of the road.

2. The second answer on the part of the defendants to this ground for declaring the charter forfeit, is that this default has existed for more than forty years, and that long after the default and the right to demand a forfeiture therefor accrued, the commonwealth has by various supplementary statutes in relation to this road, acknowledged its existence, and provided, in various forms, facilities for the defendants' future enjoyment of their franchise, and thus have barred all right to avoid the charter for causes of forfeiture previously existing.

The first of these acts was that of 1807, *c.* 78, confirming

15 *

the doings of the committee for locating the toll gates. The particular object of the defendants in procuring the passage of this act was probably to legalize some informality in the appointment or acts of this committee. This the legislature did, with a proviso in the act, " that nothing contained in this act shall be so construed as to exempt the said corporation in future from being subject in all cases to the act, entitled ' an act defining the general powers and duties of turnpike corporations.' " In 1814, an act was passed, (chapter 37,) authorizing a removal of a toll gate on the westerly part of this road, (since discontinued,) and it also gave the corporation the authority to purchase and hold real estate to the value of three thousand dollars in addition to the sum they were then authorized to hold. The statute of 1819, c. 63, authorized a discontinuance of the westerly part of the road, and authorized an increase of toll on the remaining part of the road. The statutes of 1840, c. 57, and 1842, c. 57, authorized respectively alterations in certain parts of the road.

It is strongly insisted on the part of the defendants that these statutes recognize this corporation as one in existence, and authorize them to do certain acts and enjoy certain future benefits and privileges, all which are wholly inconsistent with the idea of a forfeiture to be enforced by the legislature, and the franchise to be taken away for omissions or defaults occurring long previously.

This ground of argument is certainly entitled to consideration. The principle upon which it is urged is sound, namely, that one knowing of the existence of a cause of forfeiture, and that he is entitled by entry or other act to avoid a lease or other contract having annexed to it a condition subsequent, shall not subsequently treat the contract as a continuing one, take to himself benefits from it as such continuing contract, and after this fall back upon his right to a forfeiture for such antecedent default. The difficulty of that part of the case is in dealing with the government as with an individual, and establishing the requisite knowledge on the part of the government of the existence of the cause of the forfeiture at the time of the granting these new privileges. The cause of for-

feiture must be known, in order to render the subsequent legis· lative acts a waiver. *The People* v. *Manhattan Co.* 9 Wend. 351. Would the commonwealth be deemed to have had knowledge of the existence of these causes of forfeiture when they passed these subsequent acts ? The application of the defendants for the supplemental acts did not necessarily lead to any inquiry as to the manner the road had been constructed, and whether the stipulations in the charter had been complied with. This question of the effect of the statutes above cited upon the case, as a waiver of antecedent causes of forfeiture, is by no means free from difficulty, and if the case turned upon it, would require a more direct decision upon the point of knowledge, and how far that was inferable from the course of legislation and the whole circumstances of the case. There is nothing in the additional acts that in terms indicate they were intended as legalizing acts of former omissions or defaults, unless it be the statute of 1807, *c.* 78, confirming the doings of the committee in relation to the location of the gates, which was made in 1806. No modification was asked as to the requisition of a path for travel, of the full width of eighteen feet, or for the confirmation of the legality of the road, notwithstanding it was thus constructed at a less width than eighteen feet on the travelled path. But this defect was one that might have existed in good faith, as it might have arisen from the impracticability at any reasonable expense to make the road eighteen feet wide. It will be found in the charter of other turnpike roads, as that of Hoosac Mountain Turnpike, that omissions of this character are excused. It may be very reasonably assumed that the legislature would excuse a default of this character

But we have not thought it necessary to express any more definite opinion as to the effect of this alleged cause of for· feiture. There is another distinct ground of forfeiture assigned, as to which there is no controversy as to the facts, and as to which there must be a good and sufficient answer or excuse for their neglect to comply with the terms of their charter. Among other duties devolved upon this corporation by their charter, they were required " annually to exhibit to the gov·

ernor and council a true account of the income or dividend arising from the tolls, with their annual necessary disbursements on said road." This duty, it is conceded by the defendants, has been wholly neglected during the entire period of their existence as a corporation, down to the present day. This stipulation contained in their charter, seems to have been deemed an important one, as it was one generally introduced into the special acts granting particular turnpike corporations, that were enacted before the general law on the subject, and it was made one of the provisions of the general law as to turnpike corporations, *St.* 1804, *c.* 125, to which this company was expressly made subject by their additional act of 1805. This duty the defendants assumed, and a total non-compliance in this respect on the part of the corporation, must of course subject the party to the loss of their charter, if the government insist upon their right to vacate it for that cause. The corporation or party holding such franchise, act at the peril of losing their franchise, if they neglect substantially to comply with the stipulations of their charter. They may elect to do so, and rely upon the clemency of the government to shield them from the consequences to which they expose themselves by such defaults, or omissions of duty. They may, by their appeal to the legislative body, induce it to withhold an order to the public officer to file an information for comparatively minor omissions, or procure a discontinuance of the process at any time before judgment. But the government, who granted the charter, is always at liberty to avail itself of any and every cause of forfeiture that may arise. If they do so, the only question for the judicial tribunal is, whether any cause of forfeiture is established. Any cause of forfeiture being established upon the hearing on the information, the adjudication must be in favor of the government. As has been already stated, this stipulation or condition in the charter to render annually to the government and council a statement of the income from tolls and of the necessary annual expenditures, has been wholly neglected during the entire period that has elapsed since the construction of the road. Has this cause of forfeiture been waived by the gov-

ernment ?    The only evidence of this is the great length of time this omission has been allowed to pass with impunity, and the various supplementary acts of the legislature already specified, created between the years of 1806 and 1842.   Supposing the earlier cases of default, indeed all prior to 1842, to have been waived by the course of legislation as to this corporation, yet that must be the limit of the waiver, giving to it the most extended effect.   Be it so, that on the passage of the act of 1840 and 1842, this road was recognized by the legislature as in lawful existence, and was by them then authorized to continue in the exercise of their franchise of taking toll, yet it was as a turnpike, and subject to the duty thenceforth of making the annual returns required by the existing laws.   This duty was neglected for the seven consecutive years subsequent to these statutes, and immediately preceding the filing of this information.   This was a default which authorized the government to proceed against the corporation for a forfeiture.   This omission, under the peculiar circumstances of the case, the limited extent of the road, and its very small income, might have been excused by the legislature, had they deemed proper so to do.   But that matter was with it, and not with the judicial tribunal.   The case having been brought before us by order of the legislature, we can only administer the strict rules of law applicable to the same. Finding the allegation of any one substantial breach of the duties required of the corporation by the charter to be established, we are bound to declare the charter forfeited.   The case most favorable to the defence that we have found, is that of *The State* v. *Fourth New Hampshire Turnpike,* 15 N. Hamp. 162, where it was held that the forfeiture of a charter caused by past neglect to render annual accounts, might be waived by a subsequent legislative act, changing the route of the road in certain places.   Here, however, the party had committed no default after the passage of the subsequent act, but had from that time rendered the annual accounts This case would seem to furnish a precedent that would have barred all defaults prior to 1842.   It assumes that such default not waived would be a cause of forfeiture, and fur

nishes no authority for making the statutes relied upon a waiver to the default, and neglect to render the annual accounts for the seven years succeeding the statute of 1842.

The result is that there must be judgment against the corporation, unless the legislature remit the forfeiture.